## Case No. 12,782.

### SHERWOOD v. SUTTON.

[5 Mason, 143.] [1]

Circuit Court, D. New Hampshire. Oct. Term, 1828.

SALE—FRAUDULENT MISREPRESENTATIONS—STATUTE OF LIMITATIONS—CONCEALMENT—PRACTICE IN EQUITY.

1. In New Hampshire, in an action on the case, for a deceitful representation in a sale, the statute of limitations was pleaded in bar. The plaintiff replied, that there was a fraudulent concealment of the deceit, until within six

---

[1] [Reported by William P. Mason, Esq.]

years. It was *held*, that the replication was a good answer to the plea.

[Cited in Veazie v. Williams, Case No. 16,907; Carr v. Hilton, Id. 2,436; U. S. v. Maillard, Id. 15,709; Bailey v. Glover, 21 Wall. (88 U. S.) 348; Andrews v. Dole, Case No. 373; Tyler v. Angevine, Id. 14,306.]

[Cited in Bowman v. Sanborn, 18 N. H. 208; Conyers v. Kenan, 4 Ga. 308; In re Deake, 80 Me. 55, 12 Atl. 50; Encking v. Simmons, 28 Wis. 281; Fee v. Fee, 10 Ohio, 473; Fisher v. Tuller, 122 Ind. 34, 23 N. E. 523; Persons v. Jones, 12 Ga. 371; Quimby v. Blackey, 63 N. H. 78; Reynolds v. Hennessy, 17 R. I. 178, 20 Atl. 307, and 23 Atl. 639; Rice v. White, 4 Leigh. 478; Sheldon v. Rockwell, 9 Wis. 183; Wear v. Skinner, 46 Md. 262, 268.]

2. In cases of concurrent jurisdiction, such as accounts, bailments, &c. courts of equity construe the statute of limitations as courts of law do, and create no other exceptions, than those created by the statute. Courts of equity, in such cases, act in obedience to the law, and not merely in analogy to the law.

[Cited in Hall v. Russell, Case No. 5,943; Anibal v. Hancock, 2 Fed. 172.]

[Cited in Phalen v. Clark, 19 Conn. 436.]

[This was an action of trespass on the case by Richard Sherwood against Richard Sutton for fraud and deceit in the sale of a vessel. There was a verdict in favor of plaintiff for $4,364.50. Case No. 12,781. The cause is now heard upon a motion in arrest of judgment.]

Mr. Mason, for plaintiff.

Mr. Saltonstall, for defendant.

STORY, Circuit Justice. Upon the posture of this case, the single question now presented for the consideration of the court is, whether the replication to the plea of the statute of limitations is, in point of law, (the issue upon it having been found in favour of the plaintiff,) a sufficient avoidance of the plea, so as to entitle the plaintiff to judgment upon the verdict.

The statute of limitations of New Hampshire, of 16th June, 1791, (N. H. Laws, p. 164,) is, in substance, a transcript of the statute of 21 Jac. I. c. 16, so far as it respects personal actions of this nature; and it contains like exceptions in favour of infants, femes covert, &c. It contains no special exception, however, as to actions founded on fraud, where the fraud has been concealed during the period of the common limitation; and therefore, the legal propriety of creating such an exception must depend upon the same principles here, as it would depend upon in the courts of Westminster Hall. There is, indeed, this consideration of no inconsiderable weight, that as there is no state court in the judicial establishment of New Hampshire, which possesses general equity powers, the remedy, if it is to be administered at all, must be administered in such cases through the instrumentality of a court of law; and hence the doctrines of courts of equity, where they are susceptible of incorporation into remedies at the common law, find a more ready admis-

sion in the state courts, than perhaps would occur, if courts of chancery had an independent existence. It would not, therefore, be matter of surprize, if in such state courts, in the construction of the statute of limitations, cases should be extracted by implication from the reach of its provisions, which a court of equity would hold to be saved by virtue of its general principles. It is certainly true. as has been contended at the bar, that the decisions of courts of equity in respect to the construction of statutes are not always to be admitted to be safe guides for courts of law, because they often arise from principles of remedial justice, wholly confined to the former courts, and inapplicable to the latter. It is not uncommon for courts of chancery to give relief in cases of unwritten contracts respecting land, against the letter of the statute of frauds, as in cases of part performance, fraud, and other springing equities. where courts of law would wholly abstain from any interference. The reason is, that the nature and extent of the relief to be granted depends so much upon circumstances, and is so much to be modified by the exercise of a sound discretion, that the proper decree could never be made to assimilate to a judgment at law. An attempt therefore to afford a remedy by a mere general judgment for either party would often work as much or more injustice, than it would cure. But such abstinence is not always observed; and an illustration of the opposite course, working a beneficial effect, may be derived from the known class of decisions under the acts for the registry of deeds of real estate. In this class of cases, courts of law have silently created an exception, in favour of a prior unrecorded deed, against the second grantee. having notice of it at the time of his purchase, following, in this result, the clear doctrine of courts of chancery. The reason is, that the same effectual remedy may be applied, by postponing the second, to the first deed at law, upon the ground of intentional fraud, as equity would administer by a decree directing a perpetual injunction, or a conveyance of the estate in favour of the first grantee. The statute of limitations does not. in its terms. embrace suits in equity, but appropriates its language to actions at law. And, primarily, the legislative intention must be deemed to be limited to such actions. But it must be obvious. that where courts of equity deal with legal titles and legal demands. it could never have been the legislative intention. that they should not be bound by the provisions of the statute. It would otherwise happen, that a legal title or demand. utterly extinct at law, would be recognized as subsisting in equity. It was. therefore, very justly said by Lord Redesdale. in Hovenden v. Lord Annesley, 2 Schoales & L. 607, 630, "that the statute must be taken virtually to include courts of equity; for when the legislature by statute limited proceedings at law in certain cases, and provided no express limitations for proceedings in equity, it must be taken to have contemplated, that equity followed the law; and. therefore, it must be taken to have virtually enacted, in the same cases. a limitation for courts of equity also." With reference to such cases, (i. e. of legal titles and demands.) the remark of his lordship is emphatically true, that courts of equity do not act merely by analogy to the statutes, but in obedience to them. This doctrine is strictly applicable to all cases, where courts of law and equity possess a concurrent jurisdiction, such as in matters of account, in certain kinds of fraud, bailments, &c., where the statute is just as much pleadable, as a bar, in equity as at law. On the other hand, there are many cases, where courts of equity act, in the application of the statute of limitations, by way of analogy only; as when they apply it to merely equitable rights and titles, not at all cognizable at law. In refusing or granting relief, they here consider the lapse of time, as furnishing a rule to bar the claim, by reference to the positive rules prescribed by the statute of limitations in legal titles or demands of a kindred nature. I do not go over the cases; but the whole doctrine will be found expounded with admirable clearness and force in Bond v. Hopkins, 1 Schoales & L. 413, 428, and Hovenden v. Lord Annesley, 2 Schoales & L. 607, 629, by Lord Redesdale; and in Cholmondeley v. Clinton, 2 Jac. & W. 1, by Sir Thomas Plumer, whose doctrine was confirmed in the house of lords by Lord Eldon and Lord Redesdale; 2 Jac. & W. 189, note; by Mr. Chancellor Kent. in Kane v. Bloodgood, 7 Johns. Ch. 90, 110; and by Mr. Chief Justice Spencer, in Murray v. Coster, 20 Johns. 576, 582. I gladly refer to such authorities, lest I should weaken the strength of the reasoning by my own imperfect comments. In the recent case of Robinson v. Hook [Case No. 11,956], in this court, the subject was discussed very much at large, so far as it touched implied trusts. Now, whatever may be said as to the authority of those decisions upon the statute of limitations. which courts of equity, acting upon equitable titles and demands only, have made by way of analogy to the law; it can scarcely be said, that the decisions in cases of concurrent jurisdiction, in which they profess to act in obedience to the law, ought not to be of great authority, as just expositions of the true intent of the statute. And hence, as I think, this class of cases has been very properly relied on in courts of law to furnish just rules for the legal interpretation of the statute; for courts of equity, dealing with legal rights and demands, are just as competent, as courts of law, to ascertain their extent and limitations.

Let us, then. in the first place, examine the decisions of courts of equity in cases of concurrent jurisdiction, so far as they apply to

the question now in judgment. The present is such a case. It is an action for a fraudulent representation and deceit; and the jury have found, that there has been a fraudulent concealment of the deceit, until within six years before the commencement of the suit. How far has such a concealment been held to constitute an avoidance of the bar of the statute of limitations? · One of the earliest cases is that of Booth v. Lord Warrington, 4 Brown, Parl. Cas. 163, which was a case of concurrent jurisdiction, upon the ground of money paid by imposition, and now sought to be recovered back. The money had been paid more than nine years before the commencement of the suit, but the imposition was not discovered or known to the plaintiff, until after the lapse of the nine years. The statute of limitations was pleaded in bar, and finally overruled, and the decision was confirmed by the house of lords. Lord Redesdale says, (2 Schoales & L. 634,) that the ground of the decision was, "that as fraud is a secret thing, and may remain undiscovered for a length of time, during such time the statute of limitations shall not operate, because, until discovery, the title to avoid it does not completely arise." And from the questions put to the judges, it may be fairly inferred, that the decision proceeded upon grounds common to courts of law and equity. The case of Western v. Cartwright, Sel. Cas. Ch. 34, 2 Eq. Cas. Abr. 10, pl. 11, appears to justify the same conclusion, as Lord Redesdale has justly observed, in the case already referred to. S. C. 13 Vin. Abr. "Fraud," Z, pl. 3, p. 542. See, also, Kane v. Bloodgood, 7 Johns. Ch. 90, 122. Then came the case of South Sea Co. v. Wymondsell, 3 P. Wms. 143, where the doctrine was amply confirmed, and the true ground of Booth v. Lord Warrington, 4 Brown, Parl. Cas. 163, was clearly stated. Deloraine v. Browne, 3 Brown, Ch. 633, manifestly proceeded upon the assumption of the same doctrine; and, indeed, the counsel on both sides admitted its general correctness. I cannot find, that the authority of these cases has ever been doubted or denied; and it is very certain, that in analogous cases, even of mere equitable titles and demands, principles of the like nature have been constantly acted upon by courts of chancery. The inference deducible from this view of the cases is, that the construction adopted by these courts, that the concealment of the fraud avoids the bar of the statute of limitations, is founded in solid sense, and is a natural limitation upon the language of the statute. I do not stop to inquire, whether it is to be deemed an implied exception out of the words of the statute, or whether the right of action, in a legal sense, does not accrue until the discovery of the fraud. The authorities present some diversity of judgment in this respect. Perhaps the true mode of considering it would be, that it is a continuing fraud during the whole period of its concealment, thus knitting it to the original wrong.

Nor do I perceive any thing in Battley v. Faulkner, 3 Barn. & Ald. 288, which prohibits us from taking this view of the point. That case proceeds upon the ground, that the plaintiff's right of action was complete, the breach of the contract being known to him more than six years before the commencement of the action. The only question was, whether a subsequent special damage created a new cause of action, and the court held, that it did not.

In the next place, let us see, how this case has been treated at law. Now, the first remark, that suggests itself is, that there is not to be found a single case in England, during the period of two centuries since the enactment of the statute, in which a court of law has been found to deny the application of the doctrine to suits at law; and more than a century ago, the very question was put, by the house of lords, to all the judges, and no trace can be found of any adverse opinion given by them. On the other hand, there is the leading case of Bree v. Holbech, 2 Doug. 655, where, upon the face of the pleadings, the direct question was put, whether fraud would, if concealed, put aside the plea of the statute of limitations. The difficulty in that case was, that the replication did not impute any fraud to the defendant, though it was ·clear, that the mortgage was a mere forgery. Lord Mansfield there said, "there may be cases, too, which fraud will take out of the statute of limitations. But here, every thing alleged in the replication may be true, without any fraud on the part of the defendant. If he (the defendant) had discovered the forgery, and then got rid of the deed, as a true security, the case would have been very different." It is by no means a just representation of this case to consider this language as a mere dictum of Lord Mansfield. He must be understood to have spoken in the name of the court; and the leave granted to the plaintiff to amend, and reply fraud in the defendant, is proof, that the court entertained no doubt upon the principal point. If they had entertained any doubt, as there was an ample argument, why should it not have been expressed? This case has been often cited, both at law and in equity, since its decision, and the doctrine of Lord Mansfield has never been denied in England. It has often been quoted, as the citations at the bar abundantly show, as good law by elementary writers. See 4 Bac. Abr. (by Guillim) "Limitations," D, p. 476; Esp. Dig. N. P. 151; 2 Com. Cont. 499; 2 Starkie, Ev. 890. In Short v. M'Carthy, 3 Barn. & Ald. 626, the case of Bree v. Holbech was cited by counsel on both sides without objection, and was not in the slightest degree impugned by the court. The principal point there was, that the new promise, relied on to take the case out of the statute, was substantially different from the original cause of action; and the original cause of action, which was negligence in an attorney, was held to have accrued at the time the

negligence occurred, though the plaintiff had no knowledge of it until a subsequent period. Mr. Justice Bayley, on that occasion, said "if the want of knowledge could take the case out of the statute of limitations, it would be competent to the plaintiff to state this in his replication." It was not so stated; nor was there the slightest pretence of fraud. In Clark v. Hougham, 2 Barn. & C. 149, the action was for money had and received, and the statute of limitations was pleaded, and the parties were at issue upon the general replication of a promise within six years. The plaintiff obtained a verdict, and upon a motion for a new trial, one of the questions argued at the bar was, that there had been fraud and misrepresentation, which took the case out of the statute. But the court were of opinion, that the pleadings did not raise that point, and if intended to be made, there should have been a special replication of the fraud. Mr. Justice Best however said, "It has been answered, that fraud prevents the operation of the statute of limitations. It is not necessary to decide that now; but I think it would have done so, had the replication raised the point." In Granger v. George, 5 Barn. & C. 149. which was trover for the non-delivery of certain deeds, there was a plea of the statute of limitations, and the general replication, that the action did accrue within six years. Upon the trial, there was no proof, that the plaintiff knew of the conversion until within six years, although it had taken place long before. The court were of opinion, under such circumstances, that the case was not taken out of the operation of the statute, the action accruing at the time of the conversion, "there not being evidence of any fraud practised by the defendant in order to prevent the plaintiff from obtaining knowledge of that which had been done." The mere fact of a want of knowledge, without fraud, was not of itself sufficient. It appears to me difficult to escape the conclusion, that if, in these late cases, where the point was brought directly to the judgment of the court, the doctrine in Bree v. Holbech had been seriously doubted, that some suggestion to that effect would have fallen from the bar or bench. A total silence, under such circumstances, would not be insignificant. But the positive affirmance of the doctrine by Mr. Justice Best is strong evidence of the actual state of the law in England.

It remains to examine the American cases, which, with one exception, which I shall have occasion hereafter to mention, are admitted to be all one way, and in conformity to Bree v. Holbech. One of the earliest cases is Jones v. Conoway, 4 Yeates, 109. where the point was directly decided by the court. Then came First Massachusetts Turnpike v. Field, 3 Mass. 201, where to a plea of the statute of limitations, there was a replication of a fraudulent concealment of the breach of the contract; and the court, upon full argument, sustained the replication, affirming, that the cause of action ought not to be considered as having accrued, until the plaintiff could obtain the knowledge, that he had a cause of action. "If," said the chief justice, "this knowledge is fraudulently concealed from him by the defendant, we should violate a sound rule of law, if we permitted the defendant to avail himself of his own fraud." And he relied on the cases of South Sea Co. v. Wymondsell, and Bree v. Holbech, as authorities. The doctrine of this case has been fully recognised and acted upon in the recent cases of Homer v. Fish, 1 Pick. 435, and Welles v. Fish, 3 Pick. 74, and constitutes the settled law of Massachusetts. In Bishop v. Little, 3 Greenl. 405, the same principle was sustained; at the same time, that it was denied, that want of knowledge without fraud would take a case out of the statute, following the line of distinction in the cases of Short v. M'Carthy, and Granger v. George. The case of Troup v. Smith's Ex'rs, 20 Johns. 33, which was an action of assumpsit on a special contract, and contained the money counts also, certainly supports a contrary doctrine, and being decided upon special pleadings, where the very point was presented by an averment, "that the fraud and deceit were not discovered by the plaintiff until a long time after the contract was to be performed." &c., and was deliberately considered, must be admitted to possess high authority. The replication did not aver in terms, that the fraud had been concealed by the party so as to prevent a discovery; but only, that the fraud was not discovered by the plaintiff. The court, however, reasoned the case upon the general principle. The decision was, that the right of action did accrue as soon as the original fraud was consummated; and not at the time when the plaintiff first discovered it; and that a fraudulent concealment was not a good answer to a plea of the statute. Mr. Chief Justice Spencer, in delivering the opinion of the court, examined the authorities with his usual accuracy and clearness. He considered the cases in courts of equity inapplicable, upon the ground, that they resulted from their peculiar jurisprudence, operating upon the conscience of the party, and the statute not being addressed to, or obligatory upon them. The case of Bree v. Holbech was adverted to by him as containing only a dictum of Lord Mansfield, and therefore unfit to guide the judgment of a court of common law in this point. In the absence of all controlling authority, he deemed it the duty of the court to adhere to the letter of the statute, and not to introduce an exception not included in any of its provisos. If the point were entirely new, and left untouched, both at law and in equity, the reasoning of the learned judge would justify much hesitation in introducing such an exception. Perhaps it would be conclusive against any attempt to go beyond the precise terms of the savings of the statute, as a limitation of duty most

fit for those, who are to construe the statute, and not to create an exception beyond its terms. But it is to be remembered, that most, if not all the statutes of limitations existing in the several states of this Union have borrowed the language of the statute of 21 of James. In all the revisions since the American Revolution, the same general enactments have been preserved; and it cannot be doubted, that the expositions of the statute, which had been adopted in England, both at law and in equity, were well known to those, who framed our own. Under such circumstances it would not be unnatural to suppose, that these expositions were received as the true interpretation of the text. It does not strike me, therefore, that the expositions of the statute by courts of chancery are to be rejected in such cases, unless they turn, not upon the words of the statute, but upon some equity peculiar to such courts, and not cognizable at law. For if such courts profess to expound the statute upon a general principle, which must equally apply to courts of law; and a fortiori, if they profess to follow the law, (as they certainly do in cases of concurrent jurisdiction,) then, as has been already remarked, their decisions may justly be deemed authorities for the guidance of courts of law. With great deference it appears to me, that the learned judge has not adverted to, or given sufficient weight to this consideration; and I cannot but think, that if his own luminous judgment in the subsequent case of Murray v. Coster, 20 Johns. 576, in which the distinction is so clearly drawn, had been then before him, he would not have been disposed to have pressed the argument against this class of chancery decisions quite so far. At all events, my own judgment does not justify me, in a case of concurrent jurisdiction, in rejecting their just influence as authoritative expositions of the statute, "valere quantum valere possent." In this conflict of American decisions, it is the duty of the court to adopt that, which seems built upon the better reason, or at least which upon an equipoise seems most consonant with public convenience and justice. I put the case in this way, because I am not called upon to discuss the point, as if it was an original one of first impression, unaffected by judicial intimation or opinion. I desire to be understood, as utterly disclaiming any intention of expressing what, under such circumstances, my opinion would be. The case is affected by judicial decisions, and the choice is fairly given to follow that, which is most consonant to the local jurisprudence of New Hampshire.

What, then, is the reason, upon which this exception has been established? It is, that every statute is to be expounded reasonably, so as to suppress, and not to extend, the mischiefs, which it was designed to cure. The statute of limitations was mainly intended to suppress fraud, by preventing fraudulent and unjust claims from starting up at great distances of time. when the evidence might no

longer be within the reach of the other party, by which they could be repelled. It ought not, then, to be so construed, as to become an instrument to encourage fraud, if it admits of any other reasonable interpretation; and cases of fraud, therefore, form an implied exception, to be acted upon by courts of law and equity, according to the nature of their respective jurisdictions. Such, it seems to me, is the reason, on which the exception is built, and not merely, that there is an equity binding upon the conscience of the party, which the statute does not reach or control. Nor is this mode of interpretation of statutes new in courts of law. The case under our registration acts concerning real estate, where notice deprives a second grantee of his priority, has been already mentioned; and, as far as I know, the doctrine pervades the courts of law throughout this Union. It certainly is the received doctrine in every state of the first circuit. Many other cases will be found collected in Bac. Abr. tit. "Statute," H, 5, 6, 7, 8; and Com. Dig. "Parliament," R, 10–16. Even the statute of limitations has received an equitable construction in cases, where the mischief was the same as that expressly provided for. Lethbridge v. Chapman, 15 Vin. Abr. 103, Wilcocks v. Huggins, 2 Strange, 907, Fitzg. 170, 289, and Kinsey v. Hayward, 1 Lutw. 97, which are recognized as good law in Hickman v. Walker, Willes 27, 29, are strong examples. The cases of Strithorst v. Graeme, 2 W. Bl. 723, 3 Wils. 145, Ruggles v. Keeler, 3 Johns. 267, White v. Bailey, 3 Mass. 271, and Fowler v. Hunt, 10 Johns. 464, through less stringent, appear to me to carry the construction beyond the literal import of the words to the substantial objects of the statute. See also Com. Dig. Temps. G. 9, &c., 5 Dane Abr. c. art. 1, 10. Now. if any exception out of the words of the statute is to be created by implication, I can scarcely conceive of one, which stands upon better reason than that now insisted on; for it is in furtherance, and not in evasion of the legislative intention. It is material to state, that the point is not, whether mere ignorance of the fact on the part of the plaintiff ought to remove the bar; but whether this ignorance, resulting from the fraudulent concealment of the fact by the defendant, ought to have that effect. It was said, at the bar, that the reasoning of Mr. Chief Justice Parsons, in 3 Mass. 201, is not characterized by his usual ability and strength. But it seems to me, that it meets the objection in the only manner. in which it can be met, that is, by affirming. that the court would violate a sound rule of law, if it permitted the defendant to avail himself of his own fraud. That is not denied by Mr. Chief Justice Spencer, who puts his opposition to the doctrine up on the words of the statute, and the inability of a court of law to dispense with its obligation. or to create exceptions. It may be fairly presumed, that the fact. that in New York cases of this sort were remediable in chan-

cery, had some influence in inducing him to adhere to the letter of the statute. For myself, I must say, that in a case of concurrent jurisdiction, if remediable in equity, it ought to be so at law; for the same reason applies to both courts.

My opinion accordingly is, that the replication is good, and the plaintiff is entitled to judgment upon the verdict. I found myself upon this ground, that in England there is an uniform course of equity decisions in favour of the doctrine, and no inconsiderable weight of common law authority in the same direction, and none, not even a dictum, against it; that in America, courts of law, in at least four states, have adopted it; that if a different rule be proper in states having a general equity jurisprudence, the same rigid construction ought not to apply to other states, where it is excluded; and that in the state courts, which are governed by a legal jurisprudence most consonant with, and influencing that of New Hampshire, it has been established in the most solemn manner.

Let judgment therefore be entered for the plaintiff. See Robinson v. Hook [Case No. 11,956].

