## DETERMINED IN THE

# FIRST DEPARTMENT,

### AT

## GENERAL TERM,

### February, 1883.

---

THOMAS D. ADAMS AND DANIEL A. DAVIS, AS ASSIGNEES, ETC., OF EMANUEL M. OBREIGHT AND SIMON WEIL, APPELLANTS, *v.* ABRAM STERN AND OTHERS, RESPONDENTS.

*Action by an assignee in bankruptcy — the limitation of two years, prescribed by section 5057 of the United States Revised Statutes, does not run if the existence of the claim be fraudulently concealed.*

This action was brought by the plaintiffs, as assignees in bankruptcy, to recover of the defendants an indebtedness for goods sold and delivered to them by the bankrupts. The defendants admitted the indebtedness, but claimed that the action could not be maintained because not brought within two years from the time the cause of action accrued as required by section 5057 of the United States Revised Statutes. It appeared that the plaintiffs were appointed assignees in February, 1876, but had no knowledge of the existence of the debt until May, 1880. The .bankrupts omitted to set out the debt in their schedule of assets, and also neglected to set it up in a schedule made to accompany a general assignment, executed by them shortly before they were adjudged bankrupts, which had been set aside as fraudulent at the suit of the plaintiffs. Their books contained no entries showing the existence of the indebtedness. There was some evidence given which tended to show that the defendants colluded with the bankrupts in concealing the debt from the plaintiffs.

*Held,* that the running of the limitation of two years, prescribed by section 5057 of the United States Revised Statutes for maintaining any suit between an assignee in bankruptcy and a person obtaining an adverse interest touching any property or rights of property transferable to or vested in such assignee, was suspended by any fraudulent concealment which prevented the commence-

ment of the action, and that it only commenced to run from the time that the plaintiffs became aware of the existence of their cause of action.

That the question as to whether or not there had been a fraudulent concealment of the existence of the indebtedness in this case should have been submitted to the jury.

APPEAL from a judgment in favor of the defendants, entered on a verdict directed by the court at the circuit, and from an order granting an additional allowance.

The action was commenced September 22, 1880, by the plaintiffs, who had been appointed assignees in bankruptcy of the firm of Obreight & Weil, February 14, 1876.

*Marsh, Wilson & Wallis,* for the appellants.

*Melville H. Regensburger,* for the respondents.

DAVIS, P. J.:

This action was brought by the plaintiffs, as assignees in bankruptcy, to recover of the defendants an indebtedness for goods sold and delivered to them by the assignors in bankruptcy. The answer of the defendants admits the sale and delivery of the goods, and does not allege that the indebtedness has been paid. They also admit that the plaintiffs are assignees in bankruptcy of the alleged bankrupts. It is alleged in the complaint and was proved on the trial that the bankrupts neglected to put the indebtedness in this case in their schedule of assets, and that the plaintiffs had no knowledge of the existence of the debt until about the month of May, 1880. It was also shown that the bankrupts prior to the proceedings in bankruptcy made an assignment for the benefit of their creditors, which assignment, after the appointment of the assignees in bankruptcy was at their suit set aside as fraudulent and void under the provisions of the bankrupt laws of the United States, by a decree entered in the District Court of the Southern District of New York, January 9, 1878. The schedules filed with that assignment did not contain any statement of the indebtedness of the defendants to the assignors, nor any reference to the transaction out of which it arose. It was also shown that the books of the bankrupts, Obreight & Weil, did not contain any entries disclosing the sale by them of any goods to the defendants, or any indebtedness of

the defendants to that firm. Some evidence was given on the trial tending to show that the defendants were parties to the concealment from the plaintiffs, of their connection with and indebtedness to Obreight & Weil.

The defendants pleaded, and at the trial relied solely as a defense upon the provisions of section 5057 of the Revised Statutes of the United States, which statute was by them put in evidence on the trial.

The plaintiffs asked to go to the jury upon the question of fraudulent concealment of the existence of the indebtedness from them by the defendants and by their assignors. The court refused to submit that question to the jury and due exception was taken.

The court directed a verdict for the defendants on the ground that the right of action was barred by the provisions of section 5057 of the Revised Statutes of the United States, the action not having been brought within two years after the right of action had accrued to the plaintiffs, to which direction exception was duly taken.

Another motion was then made on the part of the defendants for an additional allowance. The court took the motion under advisement and subsequently made an order allowing five per cent of the amount claimed by the plaintiffs. An appeal is also taken from this order.

The defendants did not deny the indebtedness, but defended it exclusively on the ground of the statute of limitations, and they succeeded in that defense. The case was a simple one, involving no intricate question of fact or law, and occupied but a short time in the trial, and we think it was not one in which an allowance should have been made. The order granting the allowance should be reversed.

Section 5057 of the Revised Statutes of the United States is as follows:

"SECTION 5057. No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person *claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee,* unless brought within two years from the time when the cause of action accrued for or against such assignee. And this provision shall not in any

case revive a right of action barred at the time when an assignee is appointed."

As an original question we should have no difficulty in holding that this section has no application to an action brought by assignees in bankruptcy, to recover a simple and acknowledged debt owing to the bankrupts, but that it related only to questions of title to the property assigned and transferable to or vested in the assignee by the decree in bankruptcy, so that no persons could contest the assignee's right to such property after the expiration of two years, and so that the assignee could not pursue the same by action in the hands of a person claiming adversely, after the same lapse of time. We agree with the learned counsel for the appellant that it does not seem to be within the reasonable meaning of the words of the statute to say that a person who admits an indebtedness for the agreed price of goods sold and delivered, and never paid for, is a person claiming an adverse interest touching property or rights of property. To illustrate more fully, if the promissory note of A. B. were part of the assigned assets, and the title of the assignee were in nowise disputed, A. B. would not be a person claiming an adverse interest touching the property or rights of property vested in the assignee, and section 5057 would have no application to the case. The note being valid in the hands of the assignee would be subject to no statute of limitations except that of the State, and if transferred by the assignees in bankruptcy the holder could bring suit at any time before the expiration of six years after the cause of action arose upon it. If, however, some third person claimed title to the note, adversely to the assignee in bankruptcy, he must sue to enforce that title within two years after his cause of action accrued against the assignee; or if, on the other hand, the adverse claimant had possession of the note, the assignee in bankruptcy must, within the same time, bring his action to enforce his claim. These questions of title are quite independent of the indebtedness of the maker of the note, whose liability upon it exists and continues independently of any controversy between the adverse claimants over the title to the note itself.

We are bound, however, to accept the authoritative construction of the statute by the courts of the United States. The decisions of the courts seem to be, to a considerable extent, in direct conflict.

(*Smith* v. *Crawford*, 6 Bened., 497; *Re Krogman*, 5 Bank'cy Reg., 116; *Bachman* v. *Packard*, 7 id., 353; *Walker* v. *Towner*, 16 id., 285; *Doty* v. *Johnson*, 6 Fed. Rep., 481; *Payson* v. *Coffin*, 4 Dillon, 386; *Phelps* v. *McDonald*, 99 U. S., 306.)

In *Phelps* v. *McDonald*, the last case cited, the court seem to have accepted the construction of section 5057, which requires that all suits by or against the assignees shall be brought within two years from the time the cause of action accrued, to be the true one; although the question whether such construction was correct was not, in fact, presented by the case, the court holding that that section had no application to actions between bankrupts and his assignee. But assuming that the court below gave the correct construction to the section of the statute in question, it is settled by the Supreme Court of the United States that a fraudulent con-concealment, which prevents the commencement of an action within the time specified by the statute of limitations, suspends the operation of the statute, so that it commences to run only from the time when a knowledge of the right of action comes to the plaintiffs. (*Sherwood* v. *Sutton*, 5 Mason, 143; *Bailey* v. *Glover*, 21 Wall., 349; *Tyler* v. *Angevine*, 15 Blatch., 543; *Martin* v. *Fullings*, 3 Fed. Rep., 206; *Gifford* v. *Helms*, 8 Otto, 252.)

In *Bailey* v. *Glover* (*supra*), it was held that where there has been no negligence or laches, on the part of the plaintiff, in coming to the knowledge of the fraud, which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by or becomes known to the party suing, or those in privity with him.

In *Martin* v. *Fullings*, the suit was brought to recover goods belonging to the bankrupt, omitted from his schedule and fraudulently concealed, and it was held to be properly brought within two years after the discovery of the facts. The principle of these decisions is applicable, we think, to the case at bar. Here the assignor in bankruptcy fraudulently concealed from the plaintiffs the fact of any indebtedness for goods sold and delivered by them to the defendants. They omitted the indebtedness and the names of their debtors from the schedules which they verified by their oath. The same omission was made in their schedule when they

made the assignment for the benefit of their creditors, although the oath required by the statute was taken.

The plaintiffs brought suit to set aside that assignment, and it was set aside by the Federal courts as void for fraud. But that fact brought no notice to the plaintiffs of the existence of the indebtedness of the defendants. It is hardly conceivable that the defendants did not know of the proceedings in bankruptcy, and that their creditors had been declared bankrupts; and no evidence was given tending to show that they were not aware of those facts. It was proved that the plaintiffs had no knowledge of the existence of the debt until about May, 1880, and then suit was commenced soon after that time. Before commencing it they had caused their claim to be presented to one of the defendants, who, it appeared by the evidence, acknowledged the indebtedness, and declared himself ready to pay the same, but without interest. He referred the matter to another of the defendants, who also, on personal application, acknowledged the indebtedness and promised to pay it.

There was a circumstance slight in itself, but sufficient without explanation to justify the presentation of the question of fraudulent concealment on the part of the defendants themselves, to the jury. For it was shown that one of the defendants, when the attorney for the plaintiff called upon him and he offered to pay the same without interest, said that if the attorney *would* enforce the interest he, the defendant, "would divulge the whole thing, and that would reflect on the attorney's father." Taken in connection with the other facts already mentioned, and unexplained, the jury might well have said that these parties not only knew of the existence of the indebtedness, but were connected with some fraudulent arrangement, by which the bankrupts were keeping the knowledge of the indebtedness from their creditors, and seeking to preserve it in the hands of the defendants for their own use. It was only in case interest was sought to be enforced that the defendant threatened to divulge the whole thing; and from this fact, in connection with the readiness to pay without interest, the jury might have inferred that they were acting under a fraudulent arrangement for the benefit of the bankrupts, under circumstances in which they thought interest ought not to be charged.

We think that under the established rules of the United States

courts, the question of fraudulent concealment was a proper one to be submitted to the jury, and that it was error to refuse to do so.

It is not necessary to consider whether or not, under the laws of the United States, the several promises of the defendants to pay the debt took the case out of the statute.

The judgment must be reversed and a new trial granted, with costs to the appellants to abide the event.

DANIELS and DWIGHT, JJ., concurred.

Judgment reversed, new trial granted, with costs to abide event.