## LEWIS v. DENISON.

STATUTE OF LIMITATIONS; FRAUD; REAL ESTATE AGENT; PRINCIPAL AND AGENT.

1. Fraudulent concealment of a cause of action will avoid the operation of the statute of limitations in a suit at law as well as in equity.

2. If a real estate owner places property in the hands of a broker for sale at a fixed price, and the broker sells it for more, to one for whom he is acting as agent for the investment of money, and secretly retains the excess, he commits a fraud upon the seller and the purchaser, for both of whom he acts as agent, and subjects himself to a double recovery of the excess.

No. 174. Submitted January 10, 1894.—Decided February 6, 1894.

HEARING on an appeal by the plaintiff from an order of the Supreme Court of the District of Columbia, holding a law term, sustaining a demurrer to a replication of fraud to

a plea of the statute of limitations in an action of *assumpsit*. *Reversed*.

The COURT in its opinion stated the case as follows:

1. The first question to be decided on this appeal is this: Does the bar of the statute of limitations run in suits at law, in the courts of this District, where there has been fraudulent concealment of the cause of action?

The plaintiff's cause of action is set out with elaborate detail in two counts of the declaration, and we will only state its substance sufficiently to show the manner in which the questions to be decided have arisen.

The allegations are: That in January, 1887, plaintiff, James P. Lewis, who was the owner of lots 93 and 94 in Denison and Leighton's subdivision of Mt. Pleasant, in the District of Columbia, employed defendant, William O. Denison, who was a real estate agent, to sell the same for him; that defendant undertook to find a purchaser at plaintiff's price of twenty-five cents per square foot; that on May 16, 1887, defendant advised him that he had contracted to sell lot 94 at twenty-two cents per square foot and had received a deposit of $50 on account thereof; and urged its acceptance by him as being a good trade, &c.; that plaintiff, confiding in his good faith and acting under his persuasion, agreed to the sale at that price, and executed a deed to Lulu M. Barnum, whom defendant represented to be the purchaser, and received the sum of $2,158.64, out of which he paid defendant a commission of three per cent. for his supposed services; that in July, 1887, defendant made substantially similar representations respecting the sale of lot 93, save as to price, which was twenty-five instead of twenty-two cents per square foot, and induced plaintiff in the same way to convey it to Elizabeth D. Battelle, who, through defendant, paid him the purchase money, to wit, $5,139.25, out of which he paid defendant a commission of five per cent. for making said sale; that during this time, and unknown to plaintiff, defendant was acting as agent and ad-

viser of said Elizabeth D. Battelle in the investment of her money, and so acting, represented to her that said lots 93 and 94 could be bought for thirty cents per square foot, which was the lowest price the owner would take for them; that he advised her to purchase at said price, and induced her to offer the same and make the deposit to secure the contract (the sale of lot 94 was consummated in May, 1887, and of lot 93 in July); that Lulu M. Barnum, to whom the deed to lot 94 was made by plaintiff at request of defendant, was not the purchaser, but was a clerk in the office of defendant, and her name was used by him as a mere conduit of the title, the better to enable him to practice his deception; that the real purchaser of 94, as well as of 93, was said Elizabeth D. Battelle, who delivered to defendant the full amount of the price of said lots at thirty cents per square foot; that out of the sums so received defendant turned over to plaintiff the purchase money at the rates of twenty-two and twenty-five cents per foot, respectively, less the commissions aforesaid, all of which was received by plaintiff without knowledge of the fraud and deception of the defendant; that plaintiff is entitled to recover from defendant the difference between the sums so paid him and the sums actually received from said Battelle on the sales of the lots.

Defendant filed pleas of the statute of limitations of three years, and of not guilty, to each count of the declaration.

Plaintiff's replication to the pleas of limitation sets out in avoidance thereof, that by reason of the fraud of defendant and its concealment from plaintiff, he had been kept from a knowledge of his right of action until within three years before the institution of his suit. Defendant demurred to this replication as bad in substance, and was sustained in the court below.

*Mr. R. Byrd Lewis* and *Mr. W. V. R. Berry* for the appellant.

The statute of limitations is not applicable to the case. The plaintiff sets out, both in his declaration and in his

replication that, owing to the fraud and concealments on the part of the defendant, he, the plaintiff, did not discover the causes of action and frauds practiced upon him by the defendant until within three years before this suit.

When a defendant fraudulently conceals a cause of action, the statute of limitations does not begin to run until the plaintiff has knowledge, or might by the use of ordinary diligence have had knowledge of it. And this is a good replication at law. *Moses* v. *Taylor,* 6 Mackey, 281 ; *Bailey* v. *Glover,* 21 Wall., 342. See also *Rosenthal* v. *Walker,* 111 U. S., 185 ; *Traer* v. *Clews,* 115 U. S., 528 ; *Sherwood* v. *Sutton,* 5 Mason, 143.

*Mr. J. F. Farnsworth* and *Mr. H. B. Moulton* for the appellee:

1. The declaration being bad in substance, the demurrer, although interposed to the replication, reaches back through the whole record and takes hold of the first defective pleading as well as the replication. See *Clearwater* v. *Meredith,* 1 Wall., 25 ; *Hines, adm'r* v. *District of Columbia,* MacArthur and Mackey, 141.

2. The statute of limitations in the District of Columbia will be found in the acts of State of Maryland of A. D. 1715, Ch. 23, Sec. 2. Under said statute the plaintiff in this cause could bring his suit within three years after the same accrued, *"and not thereafter,"* and the only exceptions to the running of said statute are found in section 3 of said act, which is as follows: " If any person entitled to any of the action or actions aforesaid shall be, at the time of any such cause of action accruing, within the age of *one and twenty years, feme covert, non compos mentis, imprisoned* or *beyond the seas,* that then such person or persons shall be at liberty to bring said action or actions within the respective times before limited after their coming to or being of full age, sound memory, at large, or returned from beyond the seas, as other persons having no such impediment might or should have done."

The matter set up in the plaintiff's replication does not come under, nor is it included in any, of the exceptions made to the running of said statute.

The statute of limitations must be construed strictly, and will not be extended beyond its express terms. See *District of Columbia* v. *Metropolitan Railroad Company*, 1 Mackey, 361; *Abell, adm'r* v. *Harris*, 11 Gill and Johnson, 246; *Troup* v. *Smith*, 20 Johnson's Reports, 33.

It is a settled doctrine of courts of law that they are bound by the language of the statute of limitations, and the limitation of actions for fraud at law begins to run from the commission of the fraud. See *Pyle* v. *Beckwith*, 1 J. J. Marsh (Ky.), 445; *Foote* v. *Farrington*, 41 N. Y., 164; *Rice* v. *White*, 4 Leigh (Va.), 474; *York* v. *Bright*, 4 Humphrey (Tenn.), 312; *Leonard* v. *Pitney*, 5 Wendell, 30; *Allen* v. *Miller*, 17 Wendell, 201.

3. Ignorance of one's rights will not prevent the operation of the statute of limitations. See *Campbell* v. *Long*, 20 Iowa, 382; *Martin* v. *Bark*, 31 Ala., 115; *Bank* v. *Waterman*, 26 Connecticut, 324; *Davis* v. *Cotten*, 2 Jones (N. C.) Eq., 430; *Bassard* v. *White*, 9 Rich (S. C.), Eq. 483.

Mr. Justice SHEPARD delivered the opinion of the Court:

That the bar of the statute of limitations will not commence to run in equity until the fraud has been discovered, or until such time as by the use of ordinary care it might reasonably have been discovered, is now universally conceded. There has, however, been great diversity of opinion with respect to the operation of this rule in actions at law. The question was thoroughly considered by Story, J., in the Circuit Court, at an early day, and after an exhaustive review of the authorities, and discussion of the principle, he considered that the rule should be made to apply at law as well as in equity. See *Sherwood* v. *Sutton*, 5 Mason, 143. The weight of authority at the present time supports the conclusion. Boswell on Lim. & Ad. Pos., Secs. 390 and 387. The only expression of opinion by the Supreme Court

of this District which we have been able to find supports the same conclusion. *Moses* v. *Taylor*, 6 Mackey, 281.

In our opinion, the question may well be considered as settled in this jurisdiction by the case of *Bailey* v. *Glover*, 21 Wall., 342. The authority of that case is denied because the statute therein construed is the limitation clause of the National Bankrupt Act, which related to actions by assignees to recover property fraudulently conveyed or concealed by the bankrupt. This point was evidently considered in that case, however, as will be seen in the opinion, wherein Mr. Justice Miller said: "This is a statute of limitation. It is precisely like other statutes of limitation, and applies to all judicial contests between the assignee and other persons, touching the property or rights of property of the bankrupt, transferred to or vested in the assignee, where the interests are adverse and have so existed for more than two years from the time when the cause of action accrued, for or against the assignee."

The second objection to the authority of the case is that it was itself a suit in equity. This objection, we think, disappears upon consideration of the phrase of the statute, "No suit *at law or in equity* shall in any case be maintainable." Referring specially to those words of the statute, Miller, J., said: "It is quite clear that this statute must be held to apply equally by its own force to courts of equity and to courts of law, and if there be an exception to the universality of its language, it must be one which applies under the same state of facts to suits at law as well as to suits in equity."

After discussing the question further upon general principles, applicable alike to both cases, he said: "But we are of opinion, as already stated, that the weight of judicial authority, both in this country and in England, is in favor of the application of the rule to suits at law as well as in equity. And we are also of opinion that this is founded in a sound and philosophical view of the principles of the statutes of limitation. They were enacted to prevent frauds; to prevent parties from asserting rights, after the lapse of

time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud, the means by which it is made successful and secure. And we see no reason why this principle should not be as applicable to suits tried on the common law side of the court's calendar as to those on the equity side." Although there is, at first glance, some apparent conflict between *Bailey* v. *Glover* and the cases of *Wood* v. *Carpenter*, 101 U. S., 135, and *National Bank* v. *Carpenter*, Id., 567, it has since been distinguished from them, and followed in two cases, both of which were suits at law. *Rosenthal* v. *Walker*, 111 U. S., 185; *Traer* v. *Clews*, 115 U. S., 528.

In accordance with these views, we must hold that the court erred in sustaining the demurrer to the replication. If it be made to appear on the trial that the defendant kept the fraud concealed, or that it was of such nature as to remain concealed after perpetration, and that therefore plaintiff did not discover it, nor discover any facts sufficient to put him upon inquiry, which if followed with ordinary diligence would have led to its discovery, until within three years before the time of filing his suit, the statute of limitations will be no bar to his recovery.

2. Though the demurrer to the replication is not well taken, it will reach back and apply to any defect that may be found in the declaration. This being the practice, it remains for us to consider the soundness of defendant's contention that the allegations of the declaration do not show a cause of action.

The contention is substantially, that plaintiff was not a stranger or a non-resident, and that he was not deceived as to the general value and salability of his lots; in the absence

of allegation it must be presumed that he knew the market value of his lots, and with that knowledge priced them to defendant for sale; and that while Mrs. Battelle was defrauded by defendant, the plaintiff sustained no injury, because he received on one lot the very price for which he authorized its sale, and on the other a price which he assented to.

It is readily conceded that the mere perpetration of a fraud does not give the right of action unless the party defrauded has sustained some actual damage as a consequence thereof. But is that the situation presented by the facts as alleged in this case and admitted by the demurrer to be true?

It is the duty of an agent, empowered to sell property for another, to obtain the best price that he reasonably can. His duty to his principal is not thoroughly performed by finding a purchaser, and, if authorized thereto, by concluding a sale at the principal's own price even, when he knows that a better price can readily be obtained. It may be conceded here, also, that the agent would not be liable in such case for negligence merely in not obtaining a better price. But this is not a case of negligence.

Plaintiff's agent for the sale of the lots had induced an offer to be made of thirty cents per square foot. We will not stop now to consider the probably criminal, and certainly shameful, violation of duty and obligation to another client, by which this offer was secured. He did procure this offer and the deposit of the money to make it good, and then falsely reported it to plaintiff as a sale at twenty-two cents per foot for one lot and twenty-five cents for the other. He collected the full price of thirty cents and paid plaintiff at the rate of twenty-two and twenty-five cents, respectively, for the lots, less his regular commission upon the lesser sum. The difference between the sums received and the sums paid, amounted to something like $2,000.00, which defendant appropriated to his own use.

As between plaintiff and defendant, to whom did this money rightfully belong? That is the question. As be-

tween them only, it was clearly part of the purchase money of plaintiff's lots. By what right, then, did defendant convert it to his own use? If one place property in the hands of an agent, or broker, for sale at a fixed price, and he sells it for more, does the excess belong to the owner or to the broker? These questions can be answered in but one way.

No attempt is made to deny the proposition here presented, but it is sought to be avoided by the introduction of the third party, Mrs. Battelle. It is contended that the fraud of defendant, as it appears in the declaration, consisted in inducing his client, Mrs. Battelle, to pay more than the lots were offered to be sold for, or were actually worth, whereby the damage and injury of the transaction resulted exclusively to her, and therefore, to her, and not to plaintiff, the cause of action accrued. We may well presume, in aid of this contention, that the offer was above the market value at the time and was procured by fraud practiced upon the purchaser. The fatal objection to this answer is, that it involves the allegation of defendant's own turpitude to avoid a legal action by one who is utterly untainted thereby. Defendant cannot be permitted to urge the commission of an even more shameful fraud in justification or excuse of the one charged by plaintiff.

For the punishment and prevention of frauds, and in the interest of morality, defendant should be held to be estopped to plead that he did not make a *bona fide* sale of plaintiff's lots, and that he defrauded another instead of the plaintiff, in converting to his own use the difference between the money received and the money paid over. To this it may be answered, that defendant was the agent of both plaintiff and Battelle, and that this doctrine would subject him to a double recovery, because Mrs. Battelle might also recover the excess, which he fraudulently caused her to pay, over the price for which the property could have been purchased. If this be true, who is to blame for it? For offenses less serious than this the courts have, in the proper forms of

action, permitted parties to be punished with exemplary, in addition to actual, damages. The right to permit the recovery of such damages has been very generally upheld as necessary to punish, and thereby restrain, willful injuries.

The defendant had no right in law or morals to become the agent at the same time, of two persons, whose interests necessarily conflict as in the case of buyer and seller. It is a relation for which there is no toleration, much less recognition, in courts of either law or equity. And when one voluntarily places himself in such position and defrauds each principal, it would be a reproach to justice to allow him to set it up in defense to escape the consequences of the discovery of his fraud by either or both of them. He must have carefully concealed the double agency from each of his clients, and led each to believe that he was representing him or her alone in the transaction, with an eye single to the one interest. He has no right to complain if, in an action by each party, he should be left, as far as any advantage to himself is concerned, in the very situation which he held himself out to occupy.

It is proper to add that the question of the sufficiency of the declaration seems not to have been presented in the court below, and that the argument and decision there were confined to the legal effect of the replication to the plea of the statute of limitations.

*For the error pointed out the judgment appealed from must be reversed with costs to the appellant, and the cause remanded for further proceedings, not inconsistent with this opinion; and it is so ordered.*